# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**S&S SALES CORPORATION,**
        Plaintiff,

     v.                                Case No. 06C0354

**MARVIN LUMBER & CEDAR COMPANY,**
        Defendant.

---

## DECISION AND ORDER

Plaintiff S&S Sales, Inc. ("S&S") brought this action in state court alleging that defendant Marvin Lumber & Cedar Company ("Marvin") violated the Wisconsin Fair Dealership Law ("WFDL"), Wis. Stat. § 135.01 et seq., by constructively terminating it as a distributor of windows, without good cause. Marvin removed the action based on diversity of citizenship. S&S is a Wisconsin corporation whose principal place of business is Wisconsin, and Marvin is a Minnesota corporation whose principal place of business is Minnesota. S&S now moves for a preliminary injunction.

## I. FACTS

Marvin manufactures windows and doors and sells them nationwide through distributors and dealers. In 1987, pursuant to an oral agreement, Marvin granted S&S a non-exclusive right to distribute its windows in eastern Wisconsin. Marvin utilizes a two-step distribution system in eastern Wisconsin, under which it sells to distributors, who in turn sell to dealers, who in turn sell to retail customers. Marvin's distributors also provide a variety of services to dealers such as training, warranty and service work.

S&S is in the business of selling windows, doors, caulk, paneling and related products, and its annual gross sales are about $15 million. It distributes only Marvin windows, but distributes various products of other manufacturers. About forty percent of S&S's profits are derived from the sale of caulk and paneling. S&S is affiliated with Sprinkmann Sons Corporation, which sells insulation and similar products. The companies are commonly owned and managed and share a building of which S&S is the lessee. Their combined 2005 sales were $33 million, of which about $9.3 million or about twenty-eight percent was attributable to the sale of Marvin products.

S&S has fourteen employees whose time is primarily devoted to Marvin products. S&S leases a truck, but it owns a van and several pieces of equipment. It advertises Marvin products, but Marvin, together with other distributors and dealers, pays for about seventy-five percent of its Marvin-related advertising expenses.

Marvin indicates that some of its larger dealers have shifted their focus to other brands of windows, which they can purchase directly from manufacturers. Marvin states that it believes that in order to retain these dealers, it must also sell directly to them as it sells directly to dealers in some other areas of its distribution network. Thus, in May 2005, Marvin advised S&S that it intended to sell directly to some large dealers in eastern Wisconsin. It also invited S&S to consider becoming a dealer. S&S responded that it believed that Marvin's proposed modification of the parties' distributorship arrangement would violate the WFDL. The parties discussed a resolution of the problem but did not reach an agreement.

2

In February 2006, Marvin advised S&S that it would commence selling directly to some large dealers on June 1, 2006, and S&S initiated the present suit seeking to prohibit it from doing so.

I will state additional facts in the course of the decision.

## II.  PRELIMINARY INJUNCTION STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (citations omitted). Granting a preliminary injunction involves the "exercise of a very far-reaching power" and is "never to be indulged in except in a case clearly demanding it." Roland Mach. Co. v. Dresser Indus. Inc., 749 F.2d 380, 389 (7th Cir. 1984) (citations omitted).

A party seeking a preliminary injunction must demonstrate that it has some likelihood of success on the merits, that there is no adequate remedy at law, and that it will suffer irreparable harm if the injunction is not granted. AM Gen. Corp. v. DaimlerChrysler Corp., 311 F.3d 796, 803 (7th Cir. 2002); see also Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001). If the party satisfies this burden, the court must consider "the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied," and consider the public interest. Ty, Inc., 237 F.3d at 895. The court's goal is to minimize the consequences of either denying a preliminary injunction to a party who will go on to win the case on the merits or of granting an injunction to a party who will go on to lose. Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd., 780 F.2d 589, 593-94 (7th Cir. 1986).

3

However, if the movant does not establish a likelihood of success on the merits or that it will suffer irreparable harm if the injunction is not granted, "then the district court's analysis ends and the preliminary injunction should not be issued." Adams v. City of Chi., 135 F.3d 1150, 1154 (7th Cir. 1998) (citation omitted).

## III.  DISCUSSION

With respect to its likelihood of succeeding on the merits, S&S argues that it is a "dealer" within the WFDL, and that Marvin "substantially change[d] the competitive circumstances of [its] dealership agreement without good cause" in violation of Wis. Stat. § 135.03.  Marvin denies both of these allegations but focuses on the latter, emphasizing that it is not terminating S&S's right to distribute Marvin windows and that S&S's right is not exclusive.  Marvin also argues that a number of dealers will continue to purchase windows from S&S.  S&S responds that by selling directly to dealers, Marvin will cut it out of many sales.  Marvin also contends that its action is justified by changes in the market, specifically the demands of some large dealers to buy directly from manufacturers.  S&S responds that Marvin is not losing money and that the dealers' demands do not justify the changes it is imposing.

Marvin also argues that S&S will be able to distribute other manufacturers' windows, but S&S disputes this, asserting that Marvin did not previously permit it to do so and that it will have difficulty obtaining a supplier.  Curiously, Marvin does not assert what might be its strongest argument – that S&S is not a dealer because it and Marvin lack a "community of interest."  The Seventh Circuit has stated that in order for a community of interest to exist, the grantor must have the alleged dealer "over a barrel," see, e.g., Home Protective Servs., Inc. v. ADT Security Servs., Inc., 438 F.3d 716, 720 (7th Cir. 2006), and I have

4

some doubt as to whether S&S could satisfy this requirement. Ultimately, however, I conclude that I need not address whether S&S is likely to succeed on the merits because, even assuming that it is, the record does not support a finding of irreparable harm.

As indicated, a plaintiff seeking a preliminary injunction must show that it has "no adequate remedy at law," and that it will suffer "irreparable harm" if the preliminary injunction is denied. Roland Mach. Co., 749 F.2d at 386. "The absence of an adequate remedy at law is a precondition to any form of equitable relief. The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait until the end of trial to get that relief." Id. Only if he will suffer irreparable harm in the interim – that is, harm that cannot be prevented or fully rectified by the final judgment after trial – can he get a preliminary injunction. Id.; see also Rio Grande Cmty Health Ctr. v. Rullen, 397 F.3d 56, 76 (1st Cir. 2005) (stating that irreparable injury in the preliminary injunction context means an injury that cannot be compensated either by a later-issued permanent injunction or a later-issued award of damages).

A plaintiff will suffer such harm if it (1) becomes insolvent or loses its business; (2) is unable to finance the lawsuit; (3) incurs damages that are very difficult to calculate; or (4) if the defendant becomes insolvent or loses its business. Roland Mach. Co., 749 F.2d at 386. Where a plaintiff will not incur losses so great as to threaten its solvency and where its losses will be largely economic and thus measurable and compensable, the plaintiff does not establish irreparable harm. Praefke Auto Elec. & Battery Inc. v. Tecumseh Prods. Co., 255 F.3d 460, 463 (7th Cir. 2001). Further, harm that is conjectural is not considered irreparable for purposes of granting a preliminary injunction. See Public

5

Serv. Co. of N.H. v. Town of W. Newbury, 835 F.2d 380, 383 (1st Cir.1987); see also Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir.1984).

Because S&S is seeking equitable relief at trial – namely, prohibiting defendant from terminating the two-step distribution system, it has an inadequate remedy at law. Roland Mach. Co., 749 F.2d at 386. However, as indicated, to grant preliminary relief, I must also find that it will suffer irreparable harm between now and the trial. In support of its argument that it will suffer such harm, S&S first cites § 135.065, which provides that "any violation of this chapter by the grantor is deemed an irreparable injury to the dealer for determining if a temporary injunction should be issued." Thus, before discussing the evidence, I will address the effect of this provision.

The principal interpretive issue raised by § 135.065 is whether, once a plaintiff establishes the likelihood of a WFDL violation, the statute creates a rebuttable or an irrebuttable presumption of irreparable harm. The words of the provision do not clearly answer this question. Read literally, § 135.065 "appears to create an irrebuttable presumption of irreparable injury." Michael A. Bowen & Brian E. Butler, The Wisconsin Fair Dealership Law § 11.21 (3d ed. 2005). However, the statute may also be reasonably read to create a rebuttable presumption. This is so because the language deeming a WFDL violation "an irreparable injury to the dealer" does not necessarily preclude a grantor from attempting to establish that the dealer will not suffer such injury. Id. § 11.22 (stating that interpreting § 135.065 as creating a rebuttable presumption of irreparable harm is neither inconsistent with nor a strained construction of the provision's language).

The legislative history of § 135.065 provides support for interpreting the statute as creating a rebuttable presumption of irreparable harm. Although the WFDL took effect in

6

1974, the legislature added the language that became § 135.065 in 1977. In 1977, Attorney William F. Nelson, who drafted the WFDL, wrote a letter stating that the reason for the § 135.065 provision was that even in situations where grantors terminated dealerships and put them out of business such that they lacked the resources to pursue a judicial remedy, some courts had refused to grant temporary injunctions on the ground that because "the business has some finite value, an adequate remedy at law exists." Nelson noted that "[t]he purpose of the statute (§ 135.065) is merely to provide that if a dealer is otherwise entitled to an injunction, the irrepairable [sic] injury argument will not be employed to deny that injunction." David James Whitehorse Klauser, The Wisconsin Fair Dealership Law, Foresight or Folly? (1993) (unpublished L.L.M. thesis, University of Wisconsin Law School) (on file at Marquette University Law School) (quoting Nelson letter attached to Sept. 13, 1977 letter from State Sen. Ronald Parys to State Rep. Thomas Hauke, available at Legislative Reference Bureau, Wisconsin Fair Dealership Law Materials).

Judicial support for treating § 135.065 as creating a rebuttable presumption of irreparable harm also appears to be emerging. Bowen & Butler, supra, § 11.22; see, e.g., Fleet Wholesale Supply Co. v. Remington Arms Co., 846 F.2d 1095, 1098 (7th Cir. 1988) (stating that based on the facts presented, the district court was not required to treat § 135.065 presumption as conclusive); see also Midwest Perishables v. Jack Frost, Inc., [New Developments], Bus. Franchise Guide (CCH) ¶ 9467 (W.D. Wis. Aug. 25, 1989) (stating that presumption of irreparable harm was rebutted by the remoteness of the WFDL violation).

7

A particularly compelling reason to interpret § 135.065 as creating a rebuttable presumption of irreparable harm is that if it is read as creating an irrebuttable presumption, it is arguably unconstitutional, and there is a strong policy in favor of construing statutes to be constitutional. Lewis Realty v. Wis. R.E. Brokers' Bd., 6 Wis. 2d 99, 108 (1959) (stating that statutes should be construed to be constitutional "if this can be reasonably done without doing violence to the accepted rules of statutory interpretation"); see also U.S. Fire Ins. Co. v. E.D. Wesley, 105 Wis. 2d 305, 319 (1982) (stating that a court is required to avoid construing a statute so as to render it unconstitutional); Jankowski v. Milwaukee County, 104 Wis. 2d 431, 439 (1981) (stating that canon of statutory construction requires courts to construe statutes to avoid constitutional objections). If § 135.065 were construed as creating an irrebuttable presumption of irreparable injury, the effect would be to require a court that found a WFDL violation to also find irreparable injury, and such a requirement would give rise to two potential constitutional objections.

First, a strong argument could be made that § 135.065 would constitute an infringement by the legislature of the judicial power. See City of Janesville v. Carpenter, 77 Wis. 288, 301-02 (1890) (addressing a provision similar to § 135.065 and holding that a statute making it "presumptively injurious" to drive piles into the Rock River was void because [t]he legislature usurped the judicial power of the courts"); see also Kevin Scott Dittmar, Foerster, Inc. v. Atlas Metal Parts – The Wisconsin Supreme Court Takes a Narrow View of the Dealer's Financial Interest Protected by the Wisconsin Fair Dealership Law, 1985 U. Wis. L. Rev. 155, 185 n.163 (noting the "long line of Wisconsin cases which hold that the issuance of a preliminary injunction is within the sole discretion of the trial court); see, e.g., Boerschinger v. Elkay Enters., Inc., 26 Wis. 2d 102, 122 (1965); Schearer

8

v. Congdon, 25 Wis. 2d 663, 670 (1964))." Thus, several trial courts have suggested or stated that if interpreted as creating an irrebuttable presumption, § 135.065 would violate the separation of powers principle. See Kealey Pharmacy & Home Care Servs. , Inc. v. Walgreen Co., No. 80-C-522 (W.D. Wis. Oct. 23, 1980) (questioning constitutionality of § 135.065 if it is construed as making irreparable harm a matter of law); see also A&L Beauty Supply Co. v. Cosmair, Inc., No. C-495-672, slip op. at 9 (Milwaukee County Cir. Ct. Sept. 4, 1979) (stating that if § 135.065 is read as creating an irrebuttable presumption of irreparable injury, it is clearly unconstitutional as a legislative invasion of a judicial function).

Second, an argument could also be made that if interpreted as creating an irrebuttable presumption, § 135.065 would violate due process. See Weinberger v. Salfi, 422 U.S. 749, 784 (1975) (stating that the constitutionality of a conclusive presumption depends in part on whether the expense and difficulty of permitting an individualized determination of the fact conclusively presumed justifies the inherent imprecision of a conclusive presumption). Arguably, the difficulty of permitting an individualized determination of whether a dealer is irreparably harmed as the result of a WFDL violation is not so great as to justify the establishment of a conclusive presumption of irreparable harm.

For the foregoing reasons, I conclude that § 135.065 should be construed as creating a rebuttable presumption of irreparable harm and that the Wisconsin Supreme Court would so construe it. As indicated, the statute can be interpreted in this way "without doing violence to the accepted rules of statutory interpretation." Lewis Realty, 6 Wis. 2d at 108. So construed, the effect of the statute is to transfer from the plaintiff to the

9

defendant the burden of going forward with evidence on the question of irreparable injury. If neither party presents evidence on the issue, the rebuttable presumption created by the statute requires a finding in favor of the dealer. If, however, the grantor presents evidence of the absence of irreparable injury, the presumption is no longer relevant, and the dealer must come forward with evidence negating the grantor's evidence. Bowen & Butler, supra, § 11.22.

In the present case, Marvin presents evidence rebutting the existence of irreparable harm, thus, the presumption falls out of the case. As previously indicated, in order to establish irreparable harm pending the trial, S&S must show that it (1) is likely to become insolvent or lose its business; (2) will be unable to finance the litigation; (3) will incur losses that are difficult to calculate; or (4) that defendant is likely to become insolvent. Roland Mach. Co., 749 F.2d at 386. S&S acknowledged at oral argument that while it might ultimately go out of the window business, it will not do so immediately, and it probably will not go out of business altogether. S&S does not argue that it will be unable to finance the litigation or that Marvin is likely to become insolvent. Thus, to obtain a preliminary injunction, S&S must establish that it will incur damages that are difficult to calculate.

The evidence does not support this conclusion. The principal injury that S&S is likely to incur between now and the trial is the loss of some sales that it would otherwise have made. The dollar amount of these sales will not be difficult to calculate. This is so because S&S has a long history of selling to the dealers to which Marvin wishes to sell directly and because Marvin keeps records of all of its dealer-direct sales. (Larson Decl. ¶ 2.) Thus, a yardstick exists for measuring whatever sales S&S might lose to Marvin. See Praefke, 255 F.3d at 463 (stating that because plaintiff's loses will be financial, they are

10

"easily measured and readily compensated"). The present case is unlike those such as Sealy Mattress of Michigan, Inc. v. Sealy, Inc., 599 F. Supp. 1494, 1503 (N.D. Ill. 1984), where the plaintiff did not have a history of selling to retailers, and thus lacked a yardstick for measuring lost sales.

  S&S also argues that it will lose goodwill, which loss will be difficult to calculate. It argues that a strain will develop between dealers and itself and that its reputation will suffer. However, this argument seems highly conjectural. Dealers will still be able to buy Marvin windows from S&S. Even if some of them chose to buy from Marvin – and the evidence suggests that because S&S offers a variety of services that Marvin will not, some dealers will stick with S&S – it is hard to see how this would adversely affect their view of S&S. Thus, S&S does not make a persuasive showing that Marvin's action will cause it to lose goodwill. See Public Serv. Co. of N.H., 835 F.2d at 383; Haussmann v. Chi. Bd. of Edu., 737 F. Supp. 56, 57 (N.D. Ill. 1990); see also P.R. Hosp. Supply, Inc. v. Boston Scientific Corp,, No. Civ. 05-1523 (HL), 2005 W.L. 1431882 at *4 (D.P.R. 2005) (all stating that harm that is conjectural is not considered irreparable harm for purposes of granting a temporary injunction).

  S&S also argues that some of its employees may leave out of concern that S&S will be unable to continue to employ them. While this is possible, it is unlikely that such losses will be incalculable such that they constitute irreparable harm. Finally, S&S argues that its losses in Marvin-specific investments will be incalculable. However, S&S presents little evidence of substantial sunk costs in Marvin-specific investments. It owns neither a building nor a truck. While S&S owns some materials with Marvin painted logos, these

11

materials do not appear to involve a significant investment. Moreover, S&S will be able to quantify any costs that it incurs in modifying them.

For the reasons stated, I conclude that between now and trial, S&S will not incur damages that are difficult to calculate. Thus, S&S will not suffer irreparable harm. See Roland Mach. Co., 749 F.2d at 386.

Therefore,

**IT IS ORDERED** that S&S's request for a temporary injunction is **DENIED**.

**IT IS FURTHER ORDERED** that a telephone conference will be held on **June 29, 2006 at 2:30 p.m. CDT.** The court will initiate the call.

Dated at Milwaukee, Wisconsin this 20 day of June, 2006.

/s_____
LYNN ADELMAN
District Judge