UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**S&S SALES CORPORATION,**
       **Plaintiff,**

    v.                                           Case No. 06C0354

**MARVIN LUMBER & CEDAR COMPANY,**
       **Defendant.**

---

### DECISION AND ORDER

Plaintiff S&S Sales, Inc. ("S&S"), a distributor of windows manufactured by defendant Marvin Lumber and Cedar Company ("Marvin"), brought the present action alleging that Marvin violated the Wisconsin Fair Dealership Law ("WFDL"), Wis. Stat. § 135.01 et seq., by selling windows directly (rather than through S&S) to several large dealers in eastern Wisconsin. S&S argued that Marvin's action substantially changed the arrangement between the parties and requested a preliminary injunction barring Marvin from selling "dealer direct." I held a hearing, and on June 20, 2006 denied S&S's request for preliminary relief. S&S Sales Corp. v. Marvin Lumber & Cedar Co., 435 F. Supp. 2d 879 (E.D. Wis. 2006). S&S timely appealed, and pursuant to Fed. R. Civ. P. 62(c), now asks me to enjoin Marvin from selling dealer direct while its appeal is pending.

### I. JURISDICTION

I first address whether I have jurisdiction to grant the relief S&S requests. Generally speaking, once a notice of appeal is filed, a district court is divested of jurisdiction over those aspects of the case involved in the appeal. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). The rule is judge-made; its purpose is to promote judicial

economy and avoid the confusion that would ensue from having the same issue before two courts simultaneously. Natural Res. Def. Council v. S.W. Marine, 242 F.3d 1163, 1166 (9th Cir. 2001). The principle of exclusive appellate jurisdiction, however, is not absolute. Union Oil Co. of Ca. v. Leavell, 220 F.3d 562, 565-66 (7th Cir. 2000). The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo. Newton v. Consol. Gas Co., 258 U.S. 165, 177 (1922). This is so because district courts have inherent power to issue orders that they deem necessary to ensure the effectiveness of the eventual judgment. Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 11 Federal Practice & Procedure § 2904 (2d ed. 1995). If district courts lacked such power, they would be unable to prevent a prevailing party from losing the benefit of a judgment. Union Oil Co., 220 F.3d at 565-66.

Fed. R. Civ. P. 62(c) codifies the above exception to the jurisdictional transfer principle. Allan Ides, The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed, 143 F.R.D. 307, 320 (1992). As is relevant here, the rule provides that "when an appeal is taken from an interlocutory . . . judgment granting . . . or denying an injunction, the [district] court in its discretion may suspend . . . or grant an injunction during the pendency of the appeal." Although the rule appears to grant unlimited authority to grant injunctive relief pending appeal, courts have construed it narrowly. Ides, supra, at 321. This interpretation of Rule 62(c) is derived from Ideal Toy Corp. v. Sayco Doll Corp., 302 F.2d 623, 625 (2d Cir. 1962), in which a party brought a motion in the district court to vacate an injunction based on new evidence after having appealed the court's order granting the injunction. The Second Circuit held:

2

> Once the appeal is taken . . . jurisdiction passes to the appellate court. Thereafter, the appellant is not usually entitled as of right to present new evidence or argument to the trial court, which in the exercise of a sound discretion will exercise jurisdiction only to preserve the status quo as of the time of appeal. Appellant's proper procedure is then to request leave of the court of appeals to proceed in the lower court. He need not even dismiss his appeal, for we have always been ready to suspend proceedings while new matter was introduced below. But absent permission of the appellate court to reopen, sound judicial administration demands that unless the judge is satisfied that this order was erroneous he shall use his power under Rule 62(c) only to preserve the status of the case as it sits before the court of appeals.

Id. (citation omitted.)

Construed narrowly, Rule 62(c) only authorizes district courts to issue orders designed to preserve the status quo or, perhaps somewhat more liberally, to preserve the integrity of the case on appeal. Id.; see, e.g., Ortho Pharm. Corp. v. Amgen, Inc., 887 F.2d 460, 464 (3d Cir. 1989) (stating that Rule 62(c) permits district courts to alter the status quo pending an appeal but only to the extent that the alteration "preserves the integrity" of the appeal); Coastal Corp. v Tex. E. Corp., 869 F.2d 817, 819-20 (5th Cir. 1989) (stating that under Rule 62(c), district courts may only issue orders designed to preserve the status quo). Thus, in the present formulation under Rule 62(c), judicial authority "must be designed to aid the appeal and, accordingly, may not materially alter the status of the case on appeal." Ides, supra, at 322.

Some commentators have criticized the narrow interpretation of Rule 62(c). See 12 Wright, et al., supra, § 3921.2 (stating that

> there are good reasons to challenge this narrow view. The theory that a line can be drawn between district court action designed to 'maintain the status quo' and other actions plunges courts headlong into the always unsatisfactory task of determining what is the status quo . . . . The risk that

3

district courts will act precipitously in ways that interfere with courts of appeals' deliberations seems more abstract than real).

Attempting to provide greater clarity to the concept of preserving the status quo, Judge Posner writes:

> Maintaining the status quo means that a controversy will still exist once the appeal is heard. Any action on the district court's part which has the effect of divesting the court of appeals of its jurisdiction over the matter, by eliminating the controversy prior to the hearing on the appeal is inappropriate.

12 Moore's Federal Practice § 62.06[1] (3d ed. 2006).

Turning to the present case, as previously indicated I denied S&S's request for a preliminary injunction barring Marvin from selling dealer-direct. S&S appealed and now asks for an injunction barring Marvin from selling dealer direct pending appeal – precisely the relief that I previously denied. Thus, based on the principles discussed above, whether I have jurisdiction to grant S&S's request depends on whether doing so would eliminate the controversy before the court of appeals or, put slightly differently, would materially alter the status of the appeal. Although it might appear that granting S&S an injunction pending appeal would grant it the ultimate relief that it seeks and thus eliminate the pending controversy, I conclude that this would not be so. S&S could not drop the appeal without losing the benefit of the injunction. Thus, whether or not I grant S&S's request for relief pending appeal, the question of whether I wrongly denied its application for a preliminary injunction would remain a live issue in the court of appeals. While courts may be reluctant to grant an injunction pending appeal when doing so in effect grants the appellant – at least temporarily – the ultimate relief it is seeks, there is no reason they should not be able to

4

do so.  See 11 Wright, et al., supra, § 2904.  Thus, I conclude that I have jurisdiction to address S&S's request.

## II.  CONSIDERATION OF NEW MATERIAL

Before proceeding to the merits of such request, however, I note that in support of its application for an injunction pending appeal, S&S presents facts and legal arguments that it did not present in connection with its application for a preliminary injunction. Specifically, S & S seeks to present the evidence that one additional employee has departed since I issued my previous order, testimony from the deposition of Mark Shuter, taken June 14, 2006, the third affidavit of Mark Heard, and various documents in support of S & S's theories regarding its interpretation of the presumption in the Wisconsin Fair Dealership Act.  Circuit courts have expressed different views as to whether a district court considering a request for an injunction pending appeal may consider material not previously presented.  Compare New York v. NRC, 550 F.2d 745, 758-59 n.7 (2d Cir. 1977) (citing Sayco 320 F.2d at 625 and holding in the negative), with Chem. Weapons Working Group v. Dep't of the Army, 101 F.3d 1360, 1362-63 (10th Cir. 1996) (Lucero, J., dissenting) (stating that

> it does not necessarily follow from the refusal to grant a preliminary injunction that the district court would also refuse injunctive relief pending appeal.  This is particularly so when the relief sought pending appeal is premised primarily on new evidence which the district court has not yet had a chance to consider)

(citation omitted).  I believe that in addressing a request for an injunction pending appeal, I should be able to consider new material.  However, even considering S&S's new

5

factual and legal arguments, I conclude that it is not entitled to an injunction pending appeal.

### III. MERITS

Turning to the merits of S&S's request, in order to establish an entitlement to an injunction pending appeal, an appellant must show (1) that it is likely to prevail on the merits of the appeal; (2) that it will likely suffer irreparable injury if I deny an injunction; (3) that the other parties involved will not be substantially harmed by granting its application; and (4) granting the injunction will serve the public interest. Glick v. Koenig, 766 F.2d 265, 269 (7th Cir. 1985). I conclude that S&S has not shown that it is likely to prevail on the merits of its appeal. I denied its request for a preliminary injunction because it failed to show that it would suffer irreparable harm prior to the trial – that is, harm that could not be fully rectified by the final judgment after trial. See Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984). In its present motion, S&S essentially reargues that issue. (See Pl.'s Br. at 1 (stating that "S&S believes that the decision denying S&S's motion did not take into account compelling reasons why S&S will be irreparably harmed").) However, I find S&S's argument unpersuasive.

S&S first argues that it will suffer harm pending the trial which cannot be fully rectified by the final judgment after the trial because even if it prevails at trial and obtains a permanent injunction, it will lose skilled employees and as a result will not be able to service dealers. However, this argument is highly conjectural. S&S states that it employs fifteen individuals who service dealers and that since February 2006, two have departed. However, S&S does not present evidence that these employees left because of Marvin's action. Further, even if the employees left for such reason, S&S offers no evidence that

if it prevails at trial, the thirteen remaining employees who service dealers will be unable to provide the necessary service. S&S also does not explain why it could not hire two additional employees. S&S also suggests that additional employees may depart but provides no evidence in support of this assertion and, as is relevant here, no evidence that employees will leave between now and the trial. Harm that is highly conjectural cannot be reasonably treated as irreparable for purposes of granting a preliminary injunction. Pub. Serv. Co. of N.H. v. Town of W. Newbury, 835 F.2d 380, 383 (1st Cir. 1987).

S&S also suggests that it will suffer irreparable harm between now and the trial which cannot be fully rectified by a final judgment because some of the dealers it serves might go out of business. However, S&S presents no evidence that supports this assertion. Thus, it too is highly conjectural and an insufficient basis to justify a finding of irreparable harm.[1]

Finally, S&S argues that it is likely to prevail on appeal because I failed to balance the harm it would suffer if I did not grant a preliminary injunction against the harm that Marvin would suffer if I did. However, in determining whether to grant a preliminary

---

[1] On this point, S & S additionally challenges Marvin's argument that dealers may continue to purchase from S & S in the two-step distribution system despite the fact that they could purchase directly from Marvin. Specifically, S & S challenges Marvin's reliance on the fact that certain Illinois dealers (who are able to purchase directly from Marvin in their territory) still choose to purchase from S & S and Builder's World. S & S asserts that these dealers did not choose to purchase from S & S in the two-step system, but rather, were required to do so because they were doing business in S & S's territory. However, I note that Marvin's argument on this point was one of many made in support of its contention that S & S would not go out of business prior to trial. Because I concluded that Marvin rebutted the presumption of irreparable harm for other reasons, the burden of proof of irreparable harm shifted to S & S. Even given this evidence, S & S still has not demonstrated beyond the realm of conjecture that the dealers in its territory will cease purchasing Marvin products from it, or that their failure to do so will put it out of business pending trial.

7

injunction, a court does not balance harms unless the movant first establishes that it is likely to succeed on the merits and that it will suffer irreparable harm. Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 11-12 (7th Cir. 1992) (stating that "if the moving party cannot establish either of these prerequisites . . . a court's inquiry is over, and the injunction must be denied"). S&S contends that Wis. Stat. § 135.065 requires a court to balance harms even when the movant does not establish irreparable injury. For the following reasons, I disagree.

First, in interpreting a statute, I seek to discern the intent of the legislature, and I do this primarily by looking at the language of the statute. Wis. Citizens v. Wis. Dep't of Natural Res., 270 Wis. 2d 318, 329-30 (2004). The language of § 135.065 indicates that the legislature intended that when a plaintiff seeking preliminary relief establishes a WFDL violation, it is entitled to a presumption of irreparable harm.[2] Nothing in § 135.065 suggests the legislature intended the provision to be a directive to courts to balance the movant's harm against the defendant's.

The legislative history of § 136.065 also suggests no such intent. The principal drafter of the WFDL made this clear in a letter to legislators in which he stated that § 135.065 was intended to address the problem that some judges were denying preliminary relief even in situations where termination would put dealers out of business. See S&S Sales Corp., 435 F. Supp. at 884. Neither the letter nor anything else in the legislative history of § 135.065 suggests that the statute was intended as a directive to courts to balance harms.

---

[2]In my decision denying S&S's request for a preliminary injunction, I concluded that the presumption created by § 135.065 was rebuttable.

8

S&S argues that case law existing at the time that § 135.065 was enacted supports its view that I should have balanced harms. This argument is unpersuasive. In 1977 when the legislature enacted § 135.065, the standard governing the issuance of preliminary injunctions was as follows:

> Injunctions, whether temporary or permanent, are not to be issued lightly. . . . Temporary injunctions are to be issued only when necessary to preserve the status quo. Injunctions are not to be issued without a showing of lack of adequate remedy at law and irreparable harm, but at the temporary injunction stage the requirement of irreparable injury is met by a showing that, without it to preserve the status quo pendente lite, the permanent injunction sought would be rendered futile.

Werner v. A.L. Grootemaat & Sons, Inc., 80 Wis. 2d 513, 520 (1977). This standard is similar to the test employed by the Seventh Circuit. No balancing of harms is required unless the movant first establishes irreparable injury. Thus, S&S's reliance on 1970s case law is misplaced.

Finally, S&S argues that interpreting § 135.065 as creating a rebuttable presumption without also reading into it a requirement that courts balance harms effectively eviscerates the statute. This argument is also unpersuasive. In the present case, S&S attempted to establish irreparable harm by showing that prior to trial, it would incur damages that are not readily calculable. See Roland Mach. Co., 749 F.2d at 386. S&S presented no evidence on this point but, nevertheless, because of the presumption could have established it had Marvin not been able to show that its records made a precise calculation of damages possible.[3] This hardly means that § 135.065 was eviscerated.

---

[3]S&S acknowledges that even with the benefit of the presumption it could not establish irreparable harm in any other way, such as by showing that it would go out of business, be unable to finance the lawsuit, or that Marvin would become insolvent. S&S Sales Corp., 435 F. Supp. 2d at 886.

9

## IV. CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that S&S's motion for an injunction pending appeal is **DENIED.**

Dated at Milwaukee, Wisconsin this 16 day of October, 2006.

/s_____
LYNN ADELMAN
District Judge